Nicole Golob (SBN 190444)
E-Mail: ngolob@fisherphillips.com
Deborah A. Hedley (SBN 276826)
E-Mail: dahedley@fisherphillips.com
FISHER & PHILLIPS LLP
21600 Oxnard Street, Suite 700
Woodland Hills, California 91367
Telephone: (818) 230-4250
Facsimile: (818) 230-4251

Attorneys for Defendant
MOSAIC VALUE PARTNERS, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOCUS FINANCIAL PARTNERS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>MOSAIC VALUE PARTNERS, LLC,<br><br>Defendant. | CASE NO.: 8:26-cv-01050 JWH (KESx)<br><br>**MOSAIC VALUE PARTNERS OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER**<br><br>*[Filed concurrently with Request for Judicial Notice, and Declarations of Deborah Hedley, Christopher Quigley, John Buckingham, and Jason Clark in support thereof]*<br><br>Date:      May 8, 2026<br>Time:      10:00 a.m.<br>Ctrm:      9D, 9th Floor<br><br>Complaint Filed:      May 1, 2026<br>Trial Date:      None set |

FP 63699693.3

TABLE OF CONTENTS

Page

I.    INTRODUCTION ..........................................................................................1

II.    ARGUMENT ...............................................................................................2

    A.    THERE IS NO GOOD CAUSE FOR AN EX PARTE ...................................2

    B.    PLAINTIFF'S REQUEST FOR A TRO SHOULD BE DENIED .................3

        1.    Plaintiff Will Not Prevail on the Merits...........................................3

            a.    Plaintiff Has Not Shown Ownership of a Trademark ................4

            b.    Plaintiff Has Not Shown Likelihood of Confusion ...................5

                (1)    Similarity of the Marks .........................................5

                (2)    Strength of the Mark .............................................7

                (3)    Proximity of the Goods .........................................9

                (4)    Evidence of Confusion ........................................11

                (5)    Similarity in the Marketing Channels ..................11

                (6)    The Type of Goods and the Degree of Care Likely to be Exercised by Consumers.........................11

                (7)    The Defendant's Intent in Selecting its Mark ................12

                (8)    The Likelihood of Expansion into the Markets ............12

         2.    Plaintiffs Have Not Demonstrated They Will Suffer Irreparable Harm Absent an Injunction ................................12

        3.    The Balance of Equities Tips in Defendants' Favor..........................13

        4.    The Public Interest is Furthered Through Denial of the Application...........................................................14

III.    CONCLUSION ..........................................................................................14

FP 63699693.3

## TABLE OF AUTHORITIES

Page(s)

*Cases*

*All. for the Wild Rockies v. Cottrell,*
632 F.3d 1127 (9th Cir. 2011) ..................................................................3

*AMF Inc. v. Sleekcraft Boats,*
599 F.2d 341 (9th Cir. 1979), 353 F.3d 792 (9th Cir. 2003) ...........................1, 5

*Blount v. Conn. Gen. Life Ins. Co.,*
No. CV 01-1341-BR, 2002 WL 31974405 (D. Or. July 2, 2002) .......................4

*Caribbean Marine Servs. Co. v. Baldrige,*
844 F.2d 668 (9th Cir. 1988) ...................................................................12

*CTIA - The Wireless Ass'n v. City of Berkeley, Cal.,*
928 F.3d 832 (9th Cir. 2019) ...................................................................13

*Entrepreneur Media, Inc. v. Smith,*
279 F.3d 1135 (9th Cir. 2002) .............................................................5, 6, 8, 9

*Fin. & Sec. Prods Ass'n v. Diebold, Inc.,*
Case No. C 04-04347 WHA, 2005 WL 1629813
(N.D. Cal. Jul. 8, 2005)..........................................................................12

*First Franklin Fin. Corp. v. Franklin First Fin., Ltd.,*
356 F. Supp. 2d 1048 (N.D. Cal. 2005).................................................5, 7, 11

*Garcia v. Fannie Mae,*
794 F. Supp. 2d 1155 (D. Or. 2011) ...........................................................4

*Good Meat Project v. GOOD Meat, Inc.,*
716 F. Supp. 3d 783 (N.D. Cal. 2024)....................................................3, 4, 6

*Halo Mgmt., LLC v. Interland, Inc.,*
308 F. Supp. 2d 1019 (N.D. Cal. 2003)........................................................8

*Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.,*
736 F.3d 1239 (9th Cir. 2013) .................................................................12

FP 63699693.3

*Koller v. Brown*,
224 F. Supp. 3d 871 (N.D. Cal. 2016)..................................................................12

*League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*,
752 F.3d 755 (9th Cir. 2014) ...............................................................................14

*M2 Software, Inc., v. Madacy Ent.*,
421 F.3d 1073 (9th Cir. 2005) .................................................................................9

*Mazurek v. Armstrong*,
520 U.S. 968 (1997)................................................................................................3

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*,
883 F. Supp. 488 (C.D. Cal. 1995)..........................................................................3

*Off. Airline Guides, Inc. v. Goss*,
6 F.3d 1385 (9th Cir. 1993) .....................................................................................7

*One Indus., LLC v. Jim O'Neal Distrib., Inc.*,
578 F.3d 1154 (9th Cir. 2009)..................................................................................7

*Planet Coffee Roasters, Inc. v. Hung Dam*,
No. SACV 09-00571-MLG, 2010 WL 625343
(C.D. Cal. Feb. 18, 2010).......................................................................................13

*PostX Corp. v. docSpace Co.*,
80 F. Supp. 2d 1056 (N.D. Cal. 1999)..................................................................8, 9

*Sitrus Tech. Corp. v. Le*,
600 F. Supp. 3d 1106 (C.D. Cal. 2022) .................................................................12

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., Inc.*,
240 F.3d 832 (9th Cir. 2001) ...................................................................................3

*Surfvivor Media, Inc. v. Survivor Prods.*,
406 F.3d 625 (9th Cir. 2005) ............................................................................11, 12

*United States v. Catabran*,
836 F.2d 453 (9th Cir.1988) ....................................................................................5

*United States v. Dibble*,
429 F.2d 598 (9th Cir. 1970) ...................................................................................4

TABLE OF AUTHORITIES

FP 63699693.3

*Vallejo v. Fed. Nat'l Mortg. Ass'n*,
   Case No. 2:25-cv-09737-MWC-BFM, 2025 WL 3764003
   (C.D. Cal. Dec. 23, 2025) ...................................................................................2

*Vera v. Pfiffer*,
   Case No. 2:19-cv-06846 JAK (ADS), 2020 WL 5027991
   (C.D. Cal. July 23, 2020) ...................................................................................3

*Winter v. Nat'l Res. Def. Council, Inc.*,
   555 U.S. 7 (2008)...........................................................................................3, 13

<u>*Statutes*</u>

California Business and Professions Code § 16600 ...................................................14

<u>*Other Authorities*</u>

Fed.R.Evid. 803(6).....................................................................................................5

TABLE OF AUTHORITIES

FP 63699693.3

## I.    INTRODUCTION

It is well known in this District that a party running to court on an *ex parte* should only do so where there is an actual fire.  Here, there is no fire, but only ire.  Plaintiff's Focus Financial Partners, LLC's appears to be upset at recent employee departures by three employees, who worked with Plaintiff for four months before leaving to start their own company.  Constrained by California's strong public policy towards employee mobility, the Plaintiff has brought this thin trademark infringement suit to exact litigation pain.

Plaintiff cannot believe they will win this TRO on such a bare record.  First, Plaintiff cannot succeed on the merits of its trademark infringement claim where it has failed to put forth admissible evidence of ownership of any mark into the record.  Rather, Plaintiff relies solely on its attorney's testimony about the validity of registered marks. But attorney testimony learned from an outside source is inadmissible hearsay.

Plaintiff also has not put forth sufficient evidence that there is any likelihood of confusion in the marketplace related to MVP's brand. Plaintiff fails on each of the *Sleekcraft* factors.  Notably, in arguing that the word "mosaic" is fanciful, Plaintiff fails to apprehend that MVP's name references "mosaic theory" which is a common investment research strategy used by MVP but apparently not used by Plaintiff.  Further, Plaintiff's alleged mark is one of many *mosaics* in a crowded field of companies registered with the SEC using the same descriptive or suggestive term.  On the other *Sleekcraft* factors, Plaintiff fails to put in admissible evidence of customer confusion, convergence in marketing channels, similarity of the marks, or anything else that would carry their burden.

Second, Plaintiff has put in *no* evidence of any irreparable harm, which is no longer presumed to exist under current trademark jurisprudence.

Third, the balance of equities tips firmly in MVP's favor. As a new business, if they are forced to rebrand, they risk losing consumer trust and reputation.  Plaintiff, by contrast, as the larger, established company, has much less to lose.

Fourth, the public interest is not supported by giving Plaintiff injunctive relief. California has strong protections against employers hampering employee mobility.  Here,

FP 63699693.3

given California's public policy interest, the public interest is promoted by letting the principals of MVP practice their trade, allowing MVP flourish and adding jobs in California.

Plaintiff's claims are unmeritorious, and there is no urgency to this application. The Court should see through Plaintiff's pretextual lawsuit meant to chill employee mobility, and deny *ex parte* relief.

## II.    ARGUMENT

### A.    THERE IS NO GOOD CAUSE FOR AN EX PARTE

As is well established in the Central District of California, "[e]x parte applications are solely for extraordinary relief and are rarely granted." *Vallejo v. Fed. Nat'l Mortg. Ass'n,* Case No. 2:25-cv-09737-MWC-BFM, 2025 WL 3764003, at *1 (C.D. Cal. Dec. 23, 2025) (citing *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488 (C.D. Cal. 1995)). The Local Rules for the Central District of California and this Court's Standing Order also place a heightened burden on a moving party, requiring that the moving party shall include a statement of opposing counsel's position in its moving papers, which was not done here.

The Court's standing order explains that oppositions to *ex partes* are due 24-hours of receipt of the *ex parte* application and thus the Court "takes a dim view of applicants who file their ex parte applications on Fridays or on the day before a court holiday." Standing Order of the Hon. John W. Holcomb, at p. 13. That is precisely what Plaintiff attempted to do here.

Plaintiff emailed a copy of the moving papers to Fisher Phillips after business hours on a Friday night. Hedley Decl., ¶ 2. At this point, Defendant had not retained any counsel for this case including Fisher Phillips, and thus the *Defendant* did not receive notice at that time. Hedley Decl., ¶ 3. The fact that Plaintiff's counsel attempted to notice and have this *ex parte* heard over a weekend when it had not even served the Defendant with the Complaint is a sufficient basis to deny this *ex parte* application.

Further, good cause is lacking for seeking *ex parte* relief. As set forth below, there

FP 63699693.3

is no exigency justifying disrupting other litigants to jump to the front of the line for a hearing on this motion. *Mission Power*, 883 F. Supp. at 492 ("Lawyers must understand that filing an ex parte motion, whether of the pure or hybrid type, is the forensic equivalent of standing in a crowded theater and shouting, 'Fire!' There had better be a fire.")

### B.    PLAINTIFF'S REQUEST FOR A TRO SHOULD BE DENIED

A temporary restraining order is an extraordinary and drastic remedy that may only be awarded upon a clear showing that the moving party is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). The purpose of a temporary restraining order is to preserve the status quo before a preliminary injunction hearing may be held. *Vera v. Pfiffer*, Case No. 2:19-cv-06846 JAK (ADS), 2020 WL 5027991, at *1 (C.D. Cal. July 23, 2020). To obtain a temporary restraining order, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (standard for issuing a temporary restraining order "substantially identical" to that for issuing a preliminary injunction).

The Ninth Circuit balances these factors using a "sliding scale," where "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The plaintiff must "make a showing on all four prongs." *Id*. at 1135 (emphasis added). Here, Plaintiff cannot establish any of the prongs justifying injunctive relief, and its request should be denied.

#### 1.    Plaintiff Will Not Prevail on the Merits

To prevail on a trademark infringement claim, a plaintiff must prove (1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion. *Good Meat Project v. GOOD Meat, Inc.*, 716 F. Supp. 3d 783, 796 (N.D. Cal. 2024) (denying preliminary injunction). "There is a likelihood of confusion when consumers are likely to assume that a product or service is

FP 63699693.3

associated with a source other than its actual source because of similarities between the two sources' marks or marketing techniques." *Id.* at 797 (citations omitted).

### a.   *Plaintiff Has Not Shown Ownership of a Trademark*

A motion for injunctive relief is an evidentiary motion.  Here, Plaintiff has failed to submit any admissible evidence of ownership of any marks.  Rather, Plaintiff's *counsel* has attempted to testify regarding Plaintiff's ownership of certain marks, but her testimony is inadmissible. *See Garcia v. Fannie Mae*, 794 F. Supp. 2d 1155, 1162 (D. Or. 2011) (holding affidavit of attorney attaching records she received from client was inadmissible hearsay where she lacked personal knowledge).  "Under most circumstances, an attorney has no personal knowledge of and is not competent to testify to the authenticity of documents generated before the litigation began or merely produced by his client." *Blount v. Conn. Gen. Life Ins. Co.*, No. CV 01-1341-BR, 2002 WL 31974405, at *3 (D. Or. July 2, 2002).  It is axiomatic that "an attorney cannot acquire personal knowledge based on hearsay from his client." *Id.* (*citing United States v. Dibble,* 429 F.2d 598, 602 (9th Cir. 1970)) (testimony that an affiant works with or for someone who has personal knowledge of the authenticity of a document does not establish the affiant also has the requisite personal knowledge to authenticate it).

Here, Plaintiff has not submitted any facts showing that its attorney has personal knowledge separate and apart from being retained by Plaintiff and given hearsay from the Plaintiff.  Rather, she merely states she has personal knowledge, but does not explain why or how she would have personal knowledge sufficient to authenticate the information she presents to the Court other than from her client. *See Dibble*, 429 F. 2d at 602 (explaining a lawyer could not take the stand to admit evidence at trial, and the standard on a declaration, which is not subject to cross-examination is even higher).

She also makes no effort to plead any facts that would allow the admission of her testimony and documents under any hearsay exception.[1] *See* Fed.R.Evid.

---

[1] For avoidance of doubt, MVP objects to paragraphs 3-5 of Ms. Falcon's declaration as inadmissible hearsay because the Plaintiff fails to establish any of the foundational facts required for application of the business records exception.

FP 63699693.3

803(6); *see also United States v. Catabran,* 836 F.2d 453, 457 (9th Cir.1988) ("The proponent of the business records must satisfy the foundational requirements of the business records exception."). Without submitting any evidence showing it owns any valid trademark, Plaintiff has not shown it will prevail on the merits on this prong.

<b><i>b.    Plaintiff Has Not Shown Likelihood of Confusion</i></b>

The likelihood of confusion is determined by analyzing eight factors identified in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), *abrogated on other grounds by Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n.19 (9th Cir. 2003). The *Sleekcraft* factors are (i) the strength of the protected mark; (ii) the proximity of the goods; (iii) the similarity of the marks; (iv) evidence of actual confusion; (v) the similarity in the marketing channels used; (vi) the type of goods and the degree of care likely to be exercised by consumers; (vii) the defendant's intent in selecting its mark; and (viii) the likelihood of expansion into other markets. Here, Plaintiff has not submitted admissible evidence supporting these factors, and thus, cannot prevail on the merits of their trademark infringement claim.

(1)    <i>Similarity of the Marks</i>

The alleged Marks are also not strikingly similar as Plaintiff argues. Rather, Plaintiff shies away from mentioning or discussing the three-part Ninth Circuit test for similarity, a test under which it cannot prevail. Here, first, "[s]imilarity is best adjudged by appearance, sound, and meaning." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1144 (9th Cir. 2002). Second, while the Plaintiff urges the Court to only focus on the word "mosaic," when evaluating this factor, the "plaintiff's and defendant's marks must be assessed ***in their entirety*** as they are encountered by consumers in the marketplace." *First Franklin Fin. Corp. v. Franklin First Fin., Ltd.*, 356 F. Supp. 2d 1048, 1051 (N.D. Cal. 2005) (emphases added). Third, "similarities weigh more heavily than differences." *Entrepreneur*, 279 F. 3d at 1144.

First, there are notable differences between the appearance, sound and meaning of the alleged marks. Plaintiff's alleged marks are "Mosaic Family Wealth" and "Mosaic

5<br>DEFENDANT'S OPPOSITION TO EX PARTE APPLICATION

Family Office."  Plaintiff has not set forth any evidence as to the appearance, sound or meaning of these marks.  But they have revealed that they no longer intend to use these marks, and intend to operate under the brand "Mosaic Wealth."  Mosaic Wealth's website uses the following logo:



Quigley Decl., ¶ 22 (https://mosaicwealth.com/). The elongated pale font, monochromatic color scheme and stylizing of Plaintiff's logo look nothing like MVP's logo, which is in a more squat font, with colorful and bold styling:



Quigley Decl., ¶ 21 (https://mosaicvaluepartners.com/).  Accordingly, the visual dissimilarity of the marks cuts against customer confusion.  *See Good Meat Project,* 716 F. Supp. 3d at 804 (analyzing different in font, spacing, and styles between "Good meat breakdown" and "GOOD Meat" to determine the level of similarity weighed against confusion).  As far as sound, aside from the common word "mosaic" the two marks sound nothing alike.  Finally, as to meaning, Mosaic Family Wealth and Mosaic Family Office both seem to convey that they have some association with families.  MVP gives no similar connotation.

Second, the Court will evaluate the *other* words in the mark when evaluating similarity and not just look at one word in isolation.  *See First Franklin,* 356 F. Supp. 2d at 1051 (holding marks First Franklin and Franklin First Financial were not confusingly

DEFENDANT'S OPPOSITION TO EX PARTE APPLICATION

FP 63699693.3

similar).   The Ninth Circuit applies "the anti-dissection rule" in which the validity and distinctiveness of a composite trademark is determined by viewing the trademark as a whole, as it appears in the marketplace.  *Off. Airline Guides, Inc. v. Goss,* 6 F.3d 1385, 1392 (9th Cir. 1993).  Under this rule, Plaintiff's argument that use of one component word (i.e., mosaic) from a multi-word mark is insufficient to create consumer confusion because it dissects the mark into individual component parts rather than looking at the entirety.

Third, even though similarities are weighed more than differences – here the differences in font, color, style, sound, and words in the marks tip the scale against similarity.

(2)   *Strength of the Mark*

Plaintiff argues that they have a "fanciful" mark which bears no relation to the services they offer.  *One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1164 (9th Cir. 2009) ("The strength of a mark is determined by its placement on a continuum of marks from 'generic,' afforded no protection; through 'descriptive' or 'suggestive,' given moderate protection . . . to 'arbitrary' or 'fanciful' awarded maximum protection.") (internal citations omitted).

Plaintiff goes so far as to argue that Mosaic Family Wealth is an arbitrary mark because "[c]onceptually, 'Mosaic' bears no inherent or obvious relationship to financial planning or wealth management, nor is it commonly understood to refer to such services." Dkt. 14-1 at 10.

But this argument directly undermines Mosaic's other argument that its goods and services are similar to those offered by MVP.  In MVP's practice, Mosaic is at a minimum descriptive, but more likely suggestive of its offerings.  "Mosaic theory" is a well-known theory in finance.  *See* Wikipedia: Mosaic theory (investments), available at: https://en.wikipedia.org/wiki/Mosaic_theory_(investments), last access May 4, 2026. MVP uses this theory in its investment strategies, building a mosaic of information, where rather than relying on anyone source of information, it uses public filings, management commentary, industry trends, alternative data, Bloomberg data, competitor behavior and

the like to identify patterns, raise red flags and build a "case" to make some trading decision. Quigley Decl., ¶¶ 4-5. As new information arrives, the "mosaic" is continuously updated and refined. *Id.* If Plaintiff does not use this theory, then its offerings are even more dissimilar to MVP's than alleged. If Plaintiff does use this theory (even where it argues it does not), then its mark is *not* fanciful, meaning it is entitled to lower protection. If it does describe Plaintiff's investment philosophy, then Plaintiff's alleged mark is conceptually weak, as it is merely descriptive. *See Entrepreneur Media, Inc.,* 279 F.3d at 1144.

Aside from being conceptually weak, Plaintiff's alleged mark is commercially weak for the additional reason that it exists in a crowded field of other Mosaic-related marks for financial services. Courts routinely find that a crowded field weighs strongly against confusion. *Halo Mgmt., LLC v. Interland, Inc.*, 308 F. Supp. 2d 1019, 1034 (N.D. Cal. 2003) ("popularity of a particular mark-related term may impact the strength of marks using that term."); *PostX Corp. v. docSpace Co.*, 80 F. Supp. 2d 1056, 1061 (N.D. Cal. 1999) (agreeing with defendant's argument that plaintiff's mark was weakened by the fact that it is in a "crowded field" and is "hemmed in on all sides by similar marks on similar goods.") Plaintiff's alleged mark coexists with several other Mosaic related marks in the marketplace. The Investment Adviser Public Disclosure website (maintained by the SEC) identifies several other firms that use the name "Mosaic," including:

- Mosaic Advisors
- Mosaic FI LLC
- Mosaic ATS, LLC
- Mosaic ETA LLC
- Investors Mosaic
- Mosaic Capital Inc.
- Mosaic Capital Partners LLC
- Mosaic Wealth Management, L.L.C.
- Mosaic Wealth Strategies, LLC

DEFENDANT'S OPPOSITION TO EX PARTE APPLICATION

- Mosaic Wealth Management, LLC
- Mosaic Wealth Consultants, Inc.
- The Mosaic Financial Group, LLC
- Mosaic General Partners, LLC

Quigley Decl., ¶ 17; *see also* Request for Judicial Notice ("RJN"), Ex. A (showing numerous firms registered with the term "mosaic" in their names). Indeed, non-party Mosaic Wealth Management LLC's SEC approval just became effective in March 2026, meaning it too just joined the crowded field. Quigley Decl., ¶ 18; RJN, Ex. A. Such widespread use of similar marks for related services is compelling proof of the mark's weakness. *M2 Software, Inc., v. Madacy Ent.*, 421 F.3d 1073, 1081 (9th Cir. 2005).

(3)   <em>Proximity of the Goods</em>

Plaintiff argues there is complete overlap between the services it offers and those offered by MVP. This is not true. MVP will concede that the parties operate in *related* but not identical fields. There is insufficient overlap between the two companies to find that they offer identical services as Plaintiff urges.

The case *Entrepreneur Media, Inc.* is instructive. 279 F.3d at 1148. There, the Ninth Circuit addressed the likelihood of confusion between the names of two competing magazines *Entrepreneur* and *Entrepreneur Illustrated*. *Id.* The Court explained that "[i]n addition to their connection to small businesses, Smith and EMI's companies are both related by their production of print publications." *Id.* The Court held, however, that "[t]his similarity does not however render the businesses so closely related as to suggest strongly a likelihood of confusion." *Id.* Rather, where the parties had different sales and marketing strategies, the Ninth Circuit agreed that this level of relatedness did not weigh in favor of customer confusion.

The same holds true here. MVP are investors, first and foremost. Quigley Decl., ¶ 13. Indeed, MVP "operates primarily as an investment firm with defined strategies, offering wealth management services as a complementary value-add to clients, rather than

DEFENDANT'S OPPOSITION TO EX PARTE APPLICATION

FP 63699693.3

functioning as a traditional wealth manager." *Id.*, ¶ 3. They are not wealth managers like the brand operating under Plaintiff's alleged marks. MVP traces its roots back to 1977 – nearly 50 years ago – when Al Frank ("Frank") started issuing *The Pinchpenny Speculator*, a stock-picking newsletter. *Id.*, ¶ 6. Years later, Mr. Frank renamed the newsletter to *The Prudent Speculator*. *Id.* John Buckingham, one of the owners of MVP, began working with Mr. Frank in the late 1980's and the two built Al Frank Asset Management for investors who followed *The Prudent Speculator* philosophy. *Id.*, ¶ 6. Frank's group went through a variety of acquisitions, and landed at FFP for a period of four months before the now principals of MVP decided FFP was not the right platform to deploy their distinctive approach for their customers' best interests. *Id.*, ¶¶ 6-14.

MVP deploys this unique approach to investing, which is one that has been in development and practice for over 50 years before any affiliation with Focus. The MVP owners were only affiliated with Focus for *approximately four months* and brought with them an investment philosophy – and clients who followed that philosophy – for decades. Quigley Decl., ¶¶ 6-14. Plaintiff describes its holding Mosaic Wealth as "an independent wealth management and investment advisory firm." *Compl.*, ¶ 2. But this broad description is insufficient to show that Plaintiff's investment philosophy mirrors MVP's or that it has the 50-year history of developing and offering those strategies to clients with this distinct philosophy.

Rather, Plaintiff's argument is that all "wealth management and investment advisory" firms are offering investors the same investment and wealth management philosophies and offerings. Therefore, according to Plaintiff's argument, what Plaintiff offers to investors is no different than what any of the thousands of other wealth management and investment advisor firms offer to clients. If this is true, and any investor can go to any firm in the world and obtain the same services and investment strategies, then Plaintiff can hardly profess the uniqueness of its goods, services, or investment philosophies if they are ubiquitous. Plaintiff Mosaic's argument is akin to claiming that there can only be one banking institution that uses the name "Bank" in its title because any

DEFENDANT'S OPPOSITION TO EX PARTE APPLICATION

and all banking institutions are exactly the same, regardless of offerings, history, or geography. Here, MVP bases its business on a well-developed and recognized investment philosophy and there has been no claim that Plaintiff has anything comparable. Quigley Decl., ¶¶ 6-14.

Further, because the MVP owners had no knowledge of Plaintiff's Mosaic while they were affiliated with Mosaic (as addressed below), they are limited in their ability to fully contrast additional differences between MVP and Plaintiff's Mosaic.

(4)   <em>Evidence of Confusion</em>

Plaintiff offers zero evidence of confusion, arguing it does not need to. However, Plaintiff has no basis or proof for the argument that customers are actually confused, and Courts have found this factor wanting even where a Plaintiff does offer evidence of confusion. *Surfvivor Media, Inc. v. Survivor Prods.,* 406 F.3d 625, 633 (9th Cir. 2005) (holding this factor favored defendant where there was a scant lack of actual confusion in the record where a single retailer and a single customer mistook one defendant's product as plaintiff's). Without any evidence or even a suggestion as to what the Plaintiff intends even intends develop to prove this element, this factor weighs against Plaintiff.

(5)   <em>Similarity in the Marketing Channels</em>

Plaintiff alleges that because Defendant has a website, that it engages in the same marketing channels as Plaintiff. If this were sufficient, then this element would be a nullity where almost every brand in America has a website. Here, MVP has not engaged in any marketing efforts at all, let alone in the metropolitan areas where Plaintiff operates, and this factor weighs against confusion. Quigley Decl., ¶ 20.

(6)   <em>The Type of Goods and the Degree of Care Likely to be Exercised by Consumers</em>

Plaintiff glosses over this element saying that "no degree of customer sophistication" helps prevent confusion. Again, this is not the law. Rather, in assessing likelihood of confusion, Courts note that buyers making large purchases, like a mortgage, are likely to provide much care to their expensive purchases. *First Franklin Fin. Corp.*, 356 F. Supp. 2d

11
DEFENDANT'S OPPOSITION TO EX PARTE APPLICATION

at 1052.  Thus, with important purchases (like investments) the "risk of confusion is even further diminished by the degree of care likely to be exercised by purchasers." *Id.*  Given the financial interests at stake in investing with MVP, its customers are unlikely to be confused by its offerings versus those offered by Plaintiff's brand.  This factor weighs in MVP's favor.

(7)      *The Defendant's Intent in Selecting its Mark*

None of MVP's principals were aware at the time of selecting their name that their former employer, Plaintiff Focus had acquired any brand with the name Mosaic in it.  Quigley Decl. ¶ 16; Clark Decl., ¶ 3, Buckingham Decl., ¶¶ 4-5.  There was thus no intent on Defendant's part to benefit in any way related to Plaintiff's alleged marks of which it had no knowledge, and this factor firmly cuts against likelihood of confusion.

(8)      *The Likelihood of Expansion into the Markets*

Plaintiff presented no evidence related to this factor.  Plaintiff's "complete inability to adduce any concrete evidence of expansion plans tilts this factor in favor" of MVP.  *Surfvivor Media,* 406 F.3d at 634.

**2.     Plaintiffs Have Not Demonstrated They Will Suffer Irreparable Harm Absent an Injunction**

An adequate showing of irreparable harm is the "single most important prerequisite for the issuance of a [TRO]." *Koller v. Brown*, 224 F. Supp. 3d 871, 879 (N.D. Cal. 2016) (citing *Freedom Holdings., Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005)) (modification in *Koller*). A plaintiff must make an evidentiary showing that irreparable harm is likely, rather than just possible, in the absence of preliminary relief. *Sitrus Tech. Corp. v. Le*, 600 F. Supp. 3d 1106, 1110 (C.D. Cal. 2022) (citing *Winter*, 555 U.S. at 20). Plaintiffs have not shown even the possibility of irreparable injury, let alone the likelihood of it. *Fin. & Sec. Prods Ass'n v. Diebold, Inc.*, Case No. C 04-04347 WHA, 2005 WL 1629813, at *6 (N.D. Cal. Jul. 8, 2005) ("Irreparable harm must not be speculative or merely alleged to be imminent ...."). "A plaintiff must do more than merely allege imminent harm . . . a plaintiff must ***demonstrate*** immediate threatened injury as a prerequisite to preliminary

12

injunctive relief." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (emphasis in original).

In trademark cases, this standard is even more exacting. To prevail on this factor in a trademark infringement lawsuit, a plaintiff must establish irreparable harm. *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013). This means a finding of irreparable harm must be grounded in evidence, not conclusions or conjecture like Plaintiff's motion, which does not mention a single piece of evidence supporting the likelihood of irreparable harm. *See id.* at 1251 ("Those seeking injunctive relief must proffer evidence sufficient to establish a likelihood of irreparable harm.") Plaintiff has put nothing in the record establishing irreparable harm, and thus, injunctive relief is unwarranted.

### 3. The Balance of Equities Tips in Defendants' Favor

The "balancing the equities" analysis addresses the harm upon both parties of granting or denying the preliminary injunction request. *See Winter*, 555 U.S. at 24 (court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief") (citation modified). The Court "must balance the interests of all parties and weigh the damage to each." *CTIA - The Wireless Ass'n v. City of Berkeley, Cal.,* 928 F.3d 832, 852 (9th Cir. 2019) (citation modified). Here, again, Plaintiff makes no attempt to prove that the balance of equities tips in its favor with any factual showing or cite to any legal authority explaining why it should prevail on this element.

The balance of equities favors MVP. "In assessing the relative hardships to each party, the court may consider the relative size and strength of each party." *Planet Coffee Roasters, Inc. v. Hung Dam*, No. SACV 09-00571-MLG, 2010 WL 625343, at *7 (C.D. Cal. Feb. 18, 2010). MVP is a new business which was created by three individual members. Clark Decl., ¶ 2. Plaintiff owns approximately 90 companies, as a conglomerate of RIAs. As the more established company, Plaintiff is better suited to deal with any issues that would arise than the nascent MVP. Having to change its name so soon after opening

DEFENDANT'S OPPOSITION TO EX PARTE APPLICATION

its doors would risk client confusion and may also engender reputational consequences, like making them seem disorganized to potential investors. Quigley Decl., ¶ 24. The equities favor allowing Defendant to continue operations while the merits are fully litigated.

### 4. The Public Interest is Furthered Through Denial of the Application

To prevail on the public interest factor, the Plaintiffs must show that it would further the public's interest to grant the injunction, which they cannot do. *See League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014) ("The public interest inquiry primarily addresses impact on non-parties, rather than parties") (citation modified).

Here, the public interest in this state is to promote and favor employee mobility. *Cal. Bus. Prof. Code* § 16600. Helping the new company MVP keep its name and create jobs, versus stopping it because a former employer wants to stifle competition, promotes the public interest.

## III. CONCLUSION

For these reasons, Defendant requests that the Court deny the TRO application in full. Should the Court be inclined to grant any part of the Plaintiff's request, Defendant requests that the Court require posting of a significant bond, in the amount of $1,200,000, given that this frivolous lawsuit could put MVP out of business before any resolution on the merits and would cause it serious financial losses to its nascent company.

Dated: May 6, 2026                    FISHER & PHILLIPS LLP


                                       By: */s/ Deborah A. Hedley*
                                       Deborah A. Hedley
                                       Attorneys for Defendant
                                       MOSAIC VALUE PARTNERS, LLC

FP 63699693.3

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for MOSAIC VALUE PARTNERS, LLC certifies that this brief contains 4,638 words, which complies with the word limit of L.R. 11-6.1

Dated:  May 6, 2026                          /s/ Deborah A. Hedley
                                             Deborah A.  Hedley

DEFENDANT'S OPPOSITION TO EX PARTE APPLICATION

FP 63699693.3